COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Bumgardner
Argued at Richmond, Virginia


PAUL WILLIAM MANGANO

                                                        OPINION BY
v.        Record No. 2724-03-2        JUDGE RUDOLPH BUMGARDNER, III
                                                      NOVEMBER 2, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                            George F. Tidey, Judge

            Dannie R. Sutton, Jr. (Gregory R. Sheldon; Goodwin, Sutton &
            DuVal, PLC, on brief), for appellant.

            Steven A. Witmer, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        Paul William Mangano appeals his convictions of felony child abuse, Code

§ 18.2-371.1(A),[1] and misdemeanor reckless handling of a firearm, Code § 18.2-56.2(A).[2]  He

maintains that the child abuse statute did not apply to him because he was not legally responsible

for the care of the victim.  He also maintains the evidence was insufficient to prove either charge

---

[1] Code § 18.2-371.1(A):

            Any parent, guardian, or other person responsible for the care of a
            child under the age of 18 who by willful act or omission or refusal
            to provide any necessary care for the child's health causes or
            permits serious injury to the life or health of such child shall be
            guilty of a Class 4 felony.

[2] Code § 18.2-56.2(A):  "It shall be unlawful for any person to recklessly leave a loaded,
unsecured firearm in such a manner as to endanger the life or limb of any child under the age of
fourteen.  Any person violating the provisions of this subsection shall be guilty of a Class 3
misdemeanor."

and the sentence for the misdemeanor conviction exceeded the statutory maximum.[3] We only address the sufficiency issue because we reverse both convictions on that ground.

We view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences fairly deducible therefrom. Dowden v. Commonwealth, 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000). On October 22, 2002, the defendant's fourteen-year-old son, Alexander, accidentally shot his eleven-year-old friend, Johnathan, while the two were at the defendant's home.

The entire Richmond area was in a state of near terror because of a series of sniper murders committed in an area running from Washington D.C. to metropolitan Richmond. Area schools were closed. The two boys had spent the morning together and arrived at the defendant's house between 2:00 and 3:00 p.m. They were sitting in the den across from each other watching television. The defendant was upstairs working from his home office.

All three heard a loud noise outside that they thought was a gunshot. The defendant came downstairs, saw the boys for the first time, but continued to the porch to investigate the noise. Alex went upstairs and retrieved his .22 caliber rifle from the defendant's bedroom. When the defendant re-entered the home, he saw Alex sitting on the couch holding the rifle. The defendant told Alex to put the rifle away. He repeated the order and then went upstairs to answer the telephone, which was ringing. He was still upstairs a minute later when the gun discharged, striking Johnathan, and putting out his right eye.

Alex did not put the gun away as directed. While continuing to sit across from Johnathan, Alex removed the tubular magazine and a cartridge fell out. He showed it to Johnathan. Alex worked the bolt a couple of times and thought the gun was unloaded. At one

---

[3] The Commonwealth concedes the sentencing error.

point, he had the gun pointed at Johnathan, and shortly thereafter, it fired. Alex maintained he did not pull the trigger but the oily gun fired when it slipped from his hands. The police concluded the shooting was an accident, though forensic tests indicated the gun would not fire accidentally when dropped. A design defect permitted a certain type of cartridge to hang and remain in the gun during normal unloading procedures.

Alex had hunted and target practiced with the rifle since he was eight years old. He had taken and completed a gun safety course. He was careful with firearms and had always adhered to the defendant's safety rules: guns were kept unloaded, they were never loaded in the house, and they were unloaded and double-checked before being put away. The defendant kept his firearms in a locked cabinet in his office. Alex put the rifle behind the defendant's bedroom closet door a month earlier and retrieved it from there the day of the shooting. Alex cleaned and oiled the gun the night before the shooting while the defendant was in the same room.

Code § 18.2-371.1(A) proscribes a willful act or omission. Willful "denotes '"an act which is intentional, or knowing, or voluntary, as distinguished from accidental."'" Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (quoting Snead v. Commonwealth, 11 Va. App. 643, 646, 400 S.E.2d 806, 807 (1991) (quoting United States v. Murdock, 290 U.S. 389, 394 (1933))). The act necessarily implies "knowledge that particular conduct will likely result in injury or illegality." Id.

In Barrett v. Commonwealth, 268 Va. 170, 597 S.E.2d 104 (2004), the Supreme Court affirmed a conviction for child neglect, Code § 18.2-371.1(A). The defendant returned to her apartment after a night of drinking and fell asleep. Her two children, a ten month old and a two year and ten month old, were in her sole care. Six hours later, her boyfriend returned and found the defendant still asleep and the ten month old drowned in the bathtub. The child was covered with food, toys, a blanket, and a laundry basket.

The defendant knew the older child acted aggressively toward the younger child. She had previously pulled the younger child into the bathtub and submerged him in water. The Court stressed the defendant knew of the older child's propensity to injure the younger child yet recklessly ignored those warning symptoms. She "created a situation 'reasonably calculated to produce injury, or which [made] it not improbable that injury [would] be occasioned . . . .'" Id. at 184, 597 S.E.2d at 111 (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)). "The term 'willful act' imports knowledge and consciousness that injury will result from the act done." Id. at 183, 597 S.E.2d at 111.

In Ellis, 29 Va. App. at 556, 513 S.E.2d at 457, this Court reversed convictions of felony child neglect, Code § 18.2-371.1(A). The defendant left her two-year-old and four-year-old children asleep and alone in her apartment. A fire started from the gas stove, which the defendant had left on after lighting a cigarette. Her omission was negligence but did not amount to willful neglect. It was not sufficient to impose criminal liability because the evidence "fails to show that appellant left the apartment knowing the burner was on and in conscious disregard of the likely ignition of a grease fire . . . ." Id. at 555, 513 S.E.2d at 457. Willful related "to the degree to which she was aware of the danger when leaving her children unattended." Id.

The distinguishing feature between Barrett and Ellis is an awareness of the likely danger in the defendant's conduct. Barrett knew of the danger; Ellis did not. The defendant must have been aware that her conduct was likely to result in serious injury. Collado v. Commonwealth, 33 Va. App. 356, 366, 533 S.E.2d 625, 630 (2000) (shaken baby syndrome). See also Snow v. Commonwealth, 33 Va. App. 766, 775, 537 S.E.2d 6, 11 (2000) (driving over 100 mph while ignoring police pursuit was willful). "The accused must act willfully in failing to provide care or in permitting serious injury. 'Willfully' means the same things as 'criminal negligence' or recklessness; the parent, etc., must have been advertent to the likelihood that the conduct in

question would cause or permit serious injury." Roger D. Groot, Criminal Offenses and Defenses in Virginia 355 (4th ed. 2003).

In this case, the defendant did not know his son and Johnathan were in his house until he came downstairs to investigate the suspected gunshot outside. When the defendant returned to the den, he saw his son with his rifle. He immediately told his son to put it away. The defendant had no reason to suspect that the gun was loaded or that his son would not obey him. The fourteen year old was trained and experienced with firearms,[4] and he adhered to firearm safety rules.

When pronouncing judgment, the trial court stated, "I just can't understand how a person can be in a room and see a gun in the presence of two children and not take some positive act to make that room safe." That interpretation imposed a criminal sanction for failing to act to insure the room was safe. The statute punishes willful omissions, which requires an awareness that the conduct would cause or permit serious injury. It proscribes advertence, not inadvertence. The evidence did not establish that the defendant knew danger ensued from only ordering his son to put the gun away rather than taking it from him. It failed to establish "knowledge and consciousness that injury will result from the act done." Barrett, 268 Va. at 183, 597 S.E.2d at 111.

The defendant also challenges the sufficiency of the evidence of recklessly leaving a loaded firearm unsecured, Code § 18.2-56.2. The Commonwealth had to prove: the defendant recklessly left; a loaded firearm; unsecured; and in a manner to endanger a child under fourteen. Code § 18.2-56.2.

---

[4] It was not unlawful for the fourteen year old to use the firearm. Code § 18.2-56.2(B): "It shall be unlawful for any person knowingly to authorize a child under the age of twelve to use a firearm except when the child is under the supervision of an adult."

No cases address the phrase "to recklessly leave," but several cases have dealt with the corresponding phrase "to handle recklessly," which appears in the preceding statute, Code § 18.2-56.1.[5] Darnell v. Commonwealth, 6 Va. App. 485, 370 S.E.2d 717 (1988), was a prosecution for involuntary manslaughter based on recklessly handling a firearm. This Court reversed the conviction because the jury had not been instructed on criminal negligence. Id. at 492, 370 S.E.2d at 720. The decision warned, "'reckless' handling of a firearm [may not be limited to] a handling 'so gross, wanton or culpable as to show a reckless disregard of human life.'" Id. Luck v. Commonwealth, 30 Va. App. 36, 44-45, 515 S.E.2d 325, 329 (1999), repeated the caveat.

Darnell established that "reckless" conduct proscribed in a firearm statute could be less culpable than the conduct necessary for involuntary manslaughter. However, it must be more than that necessary for ordinary negligence. "Inadvertent acts of negligence without recklessness, while giving rise to civil liability, will not suffice to impose criminal liability." King v. Commonwealth, 217 Va. 601, 606, 231 S.E.2d 312, 316 (1977) (involuntary manslaughter conviction reversed because failure to turn on headlights was only ordinary negligence). The culpable conduct necessary for reckless conduct falls between the criminal negligence necessary for involuntary manslaughter and ordinary negligence. As with willful conduct, reckless conduct requires an awareness that serious injury will likely result. Barrett, 268 Va. at 183, 597 S.E.2d at 111.

In this case, the evidence does not support a finding that the defendant knew, or even should have known, the rifle was loaded or was a danger to someone under the age of fourteen.

---

[5] Code § 18.2-56.1(A): "It shall be unlawful for any person to handle recklessly any firearm so as to endanger the life, limb or property of any person. Any person violating this section shall be guilty of a Class 1 misdemeanor."

The evidence at most proved the defendant knew the rifle was upstairs behind his bedroom closet door.  He did not know it was loaded or that someone under fourteen would be coming to the house.  He had no reason to anticipate that his son would retrieve the gun and take it downstairs. He had no reason to think his son would not obey his order to put the gun away.

We conclude the evidence was not sufficient to prove the offenses charged.  A rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Accordingly, we reverse the convictions.

Reversed and dismissed.