COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Senior Judge Willis
Argued at Chesapeake, Virginia

BRANDON CARTER, S/K/A
  BRANDON LEE CARTER

                                                           MEMORANDUM OPINION[*] BY
v.              Record No. 2235-07-1                  JUDGE D. ARTHUR KELSEY
                                                              OCTOBER 7, 2008
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                                Edward W. Hanson, Jr., Judge


            James D. Garrett (Barnes & Garrett, PC, on brief), for appellant.

            Rosemary V. Bourne, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        The trial court convicted Brandon Carter of abuse and neglect of a child in violation of

Code § 18.2-371.1(A).  On appeal, Carter argues that the evidence failed to prove he willfully

abused or neglected the child and, at any rate, did not establish that he had any responsibility for

the care of the child.  Finding the evidence sufficient to demonstrate Carter's guilt, we affirm his

conviction.

                                                    I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The evidence at trial showed that Carter shared a home with his girlfriend, Krystallynn Magno, and two other housemates. All were members of the armed services. Magno went to work and left her five-month-old son in Carter's care. When the baby vomited on himself, Carter placed him in the kitchen sink. Using the sink sprayer, Carter hosed the child down with scalding water. A later investigation estimated the water temperature to be 150 degrees Fahrenheit. The baby screamed as his face turned "red" and "slimy" as the skin immediately began to burn. Within minutes, skin on the baby's chest began to come off his body.

Carter called Magno at work. He stated that he accidentally burned the child with a "hot rag," never mentioning the sprayer. Carter said the child's upper lip was burned, but did not say anything about the skin burned off the child's chest. Magno asked if the burn was "bad." "No," Carter replied. Carter then told her he would apply Vaseline to the burn.[1] Magno testified she was not worried about the child's condition because Carter "said it's not that serious. It's not that bad."

When Magno left work about six hours later and saw the baby, she fell to the ground in disbelief, crying: "My God. What happened? What did you do? I thought you said it wasn't that bad." The baby's face was red and slimy, his chest was losing the top layer of skin, and his left eye was almost swollen shut. The child looked "scary," Magno testified. Carter told Magno he did not want "social services to get involved." "We're going to get in trouble," Carter explained, and he did not "want to get in trouble with the Navy too."

Carter slept with the baby that night after Magno fell asleep on a couch. The baby whimpered throughout the night. The next morning, after being slathered the day before with Vaseline, the burns looked worse. Fearing that a daycare provider might contact the authorities,

---

[1] Carter claimed he made this decision based upon advice he received over the phone from his mother and from one of the other residents still in the home at the time.

Magno went to work and again left the baby in Carter's care. Sometime during the day Magno had a change of heart and returned home to take the baby to a hospital emergency room. The police became involved as soon as the hospital staff saw the condition of the child. During an interview with investigators, Carter admitted he and Magno decided not to take the child to the hospital earlier because they feared the police and social services personnel would investigate the incident.

A child abuse pediatrician testified at trial as an expert medical witness. She explained that the baby had second-degree burns on his face and second to third-degree burns on his chest. The expert noted that the investigation revealed the water temperature to be about 150 degrees Fahrenheit, and that was "consistent with the injuries" sustained by the child. At that temperature, the burn would have been "[n]early instantaneous." There would have been "immediate blisters and immediate screaming." Given the severity of the burns, the expert explained, the seriousness of the situation would have been immediately apparent to Carter.

Because the burns would have caused "instantaneous" blistering, the expert testified, it would have been "obvious that they require medical treatment." Delaying medical treatment created "a very high risk of infection, of scarring and also of pain." "In any child who has this severe burn, the risk could be morbidity and mortality, severe illness and/or death," the expert stated. The expert also pointed out that Vaseline "actually hold[s] the heat in" and thus "worsens the burn."[2] The expert added that the child "would have been in pain throughout the day" and anyone caring for the child would have known that.

---

[2] When asked at trial if there was "any medical care" he intended to give the child, Carter stated: "I told [Magno] I was going to put Vaseline on him, you know." Carter also admitted that, the next day, the child's burns "look[ed] like they had gotten . . . worse than what they were the day before."

The trial court denied Carter's motion to strike the evidence and found him guilty of abuse and neglect under Code § 18.2-371.1(A).  Though no evidence suggested Carter intended to scald the baby, the court reasoned, Carter nonetheless was responsible for the care of the child and willfully failed to obtain needed medical care because of the "fear of involving the police and child protective services" in the situation.

II.

SUFFICIENCY OF THE EVIDENCE:
WILLFUL NEGLECT & CAREGIVER STATUS

On appeal, Carter challenges the sufficiency of the evidence supporting two aspects of his conviction.  He claims no evidence demonstrated he *willfully* neglected the child's medical needs or that he was *responsible* for the child's care.[3]  We find no merit in either contention.

When reviewing the sufficiency of the evidence, appellate courts ask "whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt."  United States v. Powell, 469 U.S. 57, 67 (1984).  A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted).  Instead, we ask only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[3] Carter's brief on appeal also questions whether his neglect, even if willful, "exacerbated the child's injuries or caused or permitted any greater or further injury."  Appellant's Br. at 9. Citing Rule 5A:18, the Commonwealth contends Carter may not make that argument on appeal because he failed to specifically raise it in the trial court.  At oral argument on appeal, in response to this Court's inquiry, Carter's counsel agreed that his arguments were two-fold, willfulness and responsibility, not whether "whatever happened caused or permitted serious injury to the life or the health of the child."  Oral Argument at 12:31 (Sept. 3, 2008).  Accepting this concession, see, e.g., Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*) (holding the Commonwealth to a concession made on appeal), we address only whether Carter's conduct could be characterized as willful neglect by a caregiver under Code § 18.2-371.1(A).

beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original).

This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004) (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted). These principles recognize that an appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins, 44 Va. App. at 11, 602 S.E.2d at 407.

Code § 18.2-371.1(A) states that any "person responsible for the care of a child" who "by willful act or omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child shall be guilty of a Class 4 felony." Interpreting the "willful act or omission" requirement of this statute, the Virginia Supreme Court has explained:

> The word willful often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely. The word is also employed to characterize a thing done without ground for believing it is lawful.

Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004) (citation and internal brackets omitted); see also Mangano v. Commonwealth, 44 Va. App. 210, 214, 604 S.E.2d 118, 120 (2004). The willfulness requirement, however, does not mean the Commonwealth must prove the defendant "intended to injure" the child. Collado v. Commonwealth, 33 Va. App. 356, 366, 533 S.E.2d 625, 630 (2000).

Governed by this standard, the trial court did not plainly err when it concluded Carter willfully neglected to obtain necessary medical needs for the child. After scalding the baby with 150-degree water, Carter lied to the baby's mother about the severity of the child's burns and deliberately failed to obtain medical treatment for the child (which the expert testified any reasonable person would have immediately known to be necessary) out of a fear of being questioned by police and social services investigators. Instead of obtaining professional care, Carter applied Vaseline which, the expert testified, has the effect of insulating heat and worsening the burns. The child's second to third-degree burns on his chest — which caused immediate blistering, chronic pain, and shedding of the top layer of skin — were left medically untreated for nearly 24 hours. In short, Carter's failure to care for the child put the child in grave danger and displayed a willful disregard for the ever-worsening condition of the child.[4]

We similarly find no fault with the trial court's conclusion that Carter was a "person responsible for the care of a child" under Code § 18.2-371.1(A). The child's mother placed the five-month-old baby in Carter's exclusive care on the day of the scalding when she went to work. She did the same thing the next day. And she jointly shared responsibility for the child's care during the intervening night. Carter had sufficient responsibility over the child's care to fall within the scope of Code § 18.2-371.1(A). See Snow v. Commonwealth, 33 Va. App. 766, 773, 537 S.E.2d 6, 10 (2000) ("[O]ne may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order.").

---

[4] Given Carter's concession on appeal, we do not decide whether the worsening of the child's burns during Carter's care for the child constituted "serious injury to the life or health" of the child under Code § 18.2-371.1(A). See ante at 4, n.3.

III.

The evidence supports the trial court's finding that Carter violated Code § 18.2-371.1(A) by willfully failing to obtain medical treatment for the badly burned baby while the child was under his care and responsibility.  We thus affirm Carter's conviction.

<u>Affirmed.</u>