COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Beales and Senior Judge Clements
Argued at Richmond, Virginia


JUDY DENISE WRIGHT

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0558-10-2                      JUDGE RANDOLPH A. BEALES
                                                         OCTOBER 11, 2011

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                             Richard D. Taylor, Jr., Judge

              Cassandra M. Hausrath, Assistant Public Defender (Office of the
              Public Defender, on briefs), for appellant.

              Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


       Judy Denise Wright (appellant) was convicted by a jury of felony child neglect, in violation

of Code § 18.2-371.1(A).  Challenging the sufficiency of the evidence supporting this conviction,

appellant argues on appeal that she did not commit a "willful act or omission" within the meaning of

that statute.  We disagree with appellant's argument and affirm the felony child neglect conviction

for the following reasons.

                                    I. BACKGROUND

       "On appeal, we consider the evidence in the light most favorable to the Commonwealth, the

prevailing party in the [trial] court, and we accord the Commonwealth the benefit of all reasonable

inferences deducible from the evidence."  Brown v. Commonwealth, 278 Va. 523, 527, 685 S.E.2d

43, 45 (2009).

--------------------------------------------------------------------------------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence at trial established that appellant moved her family to a new residence in the City of Richmond a few days prior to August 12, 2008. Appellant owned a handgun, which she had stored in a locked gun cabinet when she lived at her old residence. Following the change in residences, some furniture (as well as a television and DVD player) were brought to the new residence, but the gun cabinet had not been moved to the new residence as of August 12, 2008. Instead, appellant stored the handgun at the new residence in a gym bag that she placed either on the floor of her bedroom or the floor of her bedroom's closet.

On the night of August 12, 2008, appellant prepared to leave the new residence for her overnight shift at a local rehabilitation facility. Her work hours were from 11:00 p.m. to 7:00 a.m. Appellant decided that her ten-year-old son, K.C.,[1] would sleep in her own bedroom that night – along with appellant's grandchildren, D.C. (age five) and Z.C. (age three). Appellant knew that her son had a history of serious behavioral problems – and that he had tried to do serious physical harm to both D.C. and Z.C. on prior occasions. Appellant had to leave her previous job when K.C. was younger – given his need for close supervision – but appellant returned to work with her current job when she saw some indicators that his behavior had improved. However, appellant still had trouble getting K.C. to follow directions, and, according to appellant, K.C. would "try anything once."

In addition to leaving K.C., D.C., and Z.C. in her own bedroom – where her handgun was located – appellant decided that her own mother, J.H., would sleep in K.C.'s bedroom. Appellant knew that J.H. had a seizure disorder that required J.H. to take medication that made her sleepy and disoriented. Appellant also suspected that J.H. had dementia.

Appellant put the children – K.C., D.C., and Z.C. – to bed at about 9:40 p.m., approximately an hour before she left for work. Appellant instructed the children not to wake up J.H., who was

---

[1] We use initials rather than full names in an attempt to better protect the privacy of the children (and other family members) referenced in this opinion.

sleeping in the other bedroom. When the children would not go to sleep, she permitted them to watch television in the bedroom, hoping that they would eventually fall asleep. Appellant apparently thought that the children were asleep when she left for work at 10:40 p.m., although there is no evidence that she actually checked to see if they were asleep prior to her departure.

Within a half-hour of the start of appellant's work shift that night, D.C. suffered a fatal gunshot wound in the bedroom where K.C., D.C., and Z.C. were supposed to be sleeping at appellant's new residence. Although J.H. was awake and applying pressure to the wound in D.C.'s forehead when the police arrived, the officers at the scene observed that J.H. had a "blank look" on her face and gave confusing responses to their questions. K.C. claimed to the police that an intruder shot D.C. – but the police dismissed K.C.'s claim after investigating it. There were no signs of forced entry, and K.C.'s hands tested positive for gunpowder. Moreover, the bullet that killed D.C. was fired from appellant's handgun, which was recovered from the gym bag on the floor of her bedroom. A magazine containing ammunition was affixed to the handgun when it was recovered.

Appellant voluntarily went to the police station and was interviewed by two detectives. A transcript of this interview was admitted into evidence at appellant's trial for felony child neglect, and a DVD of the interview was also received into the trial evidence and played for the jury.

During the police interview, appellant admitted ownership of the handgun and explained that she placed it in the gym bag because the gun cabinet had not yet been moved to the new residence. She stated that she had left the gym bag (with the handgun inside of it) on the floor of her bedroom's closet or perhaps on the floor of the bedroom. She said that she kept "a lot of candy in bags and stuff" nearby. Appellant appeared to indicate that at least one bullet was "in the chamber" of the handgun, but she also claimed that the "clip [was not] inside there." Appellant did not claim that she ensured the handgun was unloaded or that she even kept the ammunition in a different place.

- 3 -

In addition, appellant stated during the police interview that K.C. "couldn't be left alone" when he was younger because he used "to do a lot of stuff back then, a lot of stuff." Among other acts that appellant attributed to K.C., appellant said that K.C. had set appellant's friend's house on fire, had thrown D.C. (the little girl he shot to death) "in some hot water from the tub," had tried to "smother" her little brother, Z.C., with a pillow, and had placed a hot iron on the stomach of one of appellant's adult sons. Although appellant stated that K.C.'s behavior had improved to the point that she could return to work, appellant explained that K.C. "[doesn't] know why he do[es] the things he do[es], something in his head just tell[s] him to do it." Appellant added, "I'll tell him don't do stuff and he'll try anything once. Like I say look your hands wet, don't touch that socket, he'll touch it anyway. And I say that's too high for [hi]m to jump [from], he'll jump anyway . . . ."

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

- 4 -

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Code § 18.2-371.1(A) states:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 *who by willful act or omission* or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child shall be guilty of a Class 4 felony. For purposes of this subsection, "serious injury" shall include but not be limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, or (vii) life-threatening internal injuries.

(Emphasis added).

"Code § 18.2-371.1(A) proscribes a willful act or omission." Mangano v. Commonwealth, 44 Va. App. 210, 214, 604 S.E.2d 118, 120 (2004). The term willful, "as used in the [felony child neglect] statute, refers to conduct that 'must be knowing or intentional, rather than accidental, and [undertaken] without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose.'" Morris v. Commonwealth, 272 Va. 732, 738, 636 S.E.2d 436, 439 (2006) (quoting Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004)); see Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (stating that the term willful "denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental").

In her assignment of error to this Court, appellant contends that "the evidence did not establish any willful act or omission." She relies on this Court's opinions in Ellis and Mangano, where convictions for felony child neglect were reversed on appeal because the evidence failed to prove that the defendants in those cases committed a "willful act or omission" under Code § 18.2-371.1(A). However, the decisions in Ellis and Mangano are not controlling on the very different facts in this case.

In Ellis, the defendant exited her apartment after forgetting to turn off the burner on her gas stove; the resulting fire inside the apartment caused serious injury to one of her two young children whom she had left alone inside the apartment. Ellis, 29 Va. App. at 551-53, 513 S.E.2d at 455-56. Holding that the evidence was insufficient to prove a willful act under Code § 18.2-371.1(A), this Court explained that the evidence "fail[ed] to show that appellant left the apartment knowing the burner was on and in conscious disregard of the likely ignition of a grease fire . . . ." Id. at 555, 513 S.E.2d at 457.

In Mangano, the defendant observed his son handling a rifle inside their home. The son was permitted by law to handle a firearm in an unsupervised manner, he was experienced and trained in the safe handling of firearms, and he had never disobeyed the defendant's safety rules. The defendant told his son to put away the rifle and then attended to some business upstairs, but the son continued handling it and accidentally shot his friend in the eye. Mangano, 44 Va. App. at 213-14, 604 S.E.2d at 119-20. Holding that the evidence was insufficient to prove a willful omission under Code § 18.2-371.1(A), this Court explained that the evidence "did not establish that the defendant knew danger ensued from only ordering his son to put the gun away rather than taking it from him." Id. at 216, 604 S.E.2d at 121.

In both Ellis and Mangano, this Court noted that the defendant was simply unaware of the danger resulting from his or her conduct. The defendant in Ellis forgot to turn off the gas stove and had no "knowledge or consciousness that her children would be injured as a likely result of her departure to visit a neighbor for a short period of time in another residential building." Ellis, 29 Va. App. at 555, 513 S.E.2d at 457. The defendant in Mangano had "no reason to suspect that the gun was loaded or that his son would not obey him." Mangano, 44 Va. App. at 215, 604 S.E.2d at 121. Although the serious injuries in those cases resulted from these defendants'

inattention or inadvertence, Code § 18.2-371.1(A) "proscribes advertence, not inadvertence." Id. at 216, 604 S.E.2d at 121.

In this case, however, several circumstances in the record support the jury's conclusion that appellant committed a "willful act or omission" under Code § 18.2-371.1(A). Appellant was aware that the handgun was in the gym bag; she was aware that the gym bag with the handgun was on the floor (either the floor of her bedroom closet or the bedroom floor itself, but in any event easily within the reach of children); and she was also aware that she had directed the children to stay in the very same bedroom where the handgun had been placed in such an unsecured state. By appellant's own admission, she was even aware that "a lot of candy in bags and stuff" were nearby to the gym bag that contained her handgun.

Furthermore, "[v]iewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, the jury could reasonably infer from appellant's own recorded statement to the police that she was aware that there was at least one bullet in the handgun's chamber when she left for work on the night of August 12, 2008.[2] See Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010) (stating that an appellate court should defer "to any reasonable and justified inferences the fact-finder may have drawn from the facts proved").

In addition, appellant knowingly left the three children essentially unsupervised (appellant had instructed the children not to disturb J.H., who was medicated and asleep) and appellant was aware that K.C. previously had attempted to harm D.C. and Z.C. (among others).

---

[2] Notwithstanding appellant's somewhat conflicting claim that there was not "a clip" inside the handgun, a magazine containing ammunition was affixed to the handgun when it was recovered by the police. Certainly, there is no evidence in this record that appellant hid the ammunition any more effectively than she hid the handgun or that she even put the ammunition in a different location than the firearm.

See Barrett, 268 Va. at 185, 597 S.E.2d at 112 (noting that the defendant was aware that her older child had previously attempted to harm her younger child). Although appellant claimed during her recorded interview with the police that K.C.'s behavior had improved, the jury was entitled to give more weight to appellant's other statements about K.C. See Jackson, 443 U.S. at 319 (stating that it is the factfinder's responsibility "to weigh the evidence"). Significantly, appellant stated that K.C. would disobey her and would "try anything once."

Given these several circumstances, the jury could reasonably infer that appellant was aware of the location and firing potential of the handgun, of the children's presence very near this handgun, of K.C.'s history of violent behavior and tendency to "try anything once," and of J.H.'s absolute inability to intervene in the unsurprising event that K.C. (or the other children) discovered the handgun. Based on all these factors, the jury was entitled to infer that appellant knew that there was a substantial risk of harm to befall one or more of these children when she left for work on the night of August 12, 2008.

Moreover, appellant actually owned a locking gun cabinet where the handgun could be safely stored, but the gun cabinet had not yet been brought to her new residence on the night of August 12, 2008 – even though some furniture (and a television and DVD player) *already* had been brought to the new residence. This circumstance provided the jury with a further basis to conclude that appellant's conduct was knowing, voluntary, and without justifiable excuse. See Barrett, 268 Va. at 183, 597 S.E.2d at 111.

Accordingly, a rational factfinder certainly could have concluded beyond a reasonable doubt that appellant committed a "willful act or omission" in violation of Code § 18.2-371.1(A).

### III. CONCLUSION

The evidence in this case was sufficient for a rational factfinder to conclude beyond a reasonable doubt that appellant committed a "willful act or omission" under Code

§ 18.2-371.1(A). Accordingly, for the foregoing reasons, we affirm her conviction for felony child neglect under that statute.

Affirmed.