COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Callins and White
Argued by videoconference


BRANDON WILLIS KAMGA

MEMORANDUM OPINION* BY
v.      Record No. 1539-22-4        JUDGE VERNIDA R. CHANEY
JANUARY 16, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

William D. Ashwell (Ashwell & Ashwell, PLLC, on brief), for
appellant.

Jason A. Faw, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Brandon Willis Kamga of involuntary manslaughter for unlawfully

discharging a firearm within an occupied building, causing death, in violation of Code

§§ 18.2-36, -279, and recklessly handling a firearm, in violation of Code § 18.2-56.1.[1]  On appeal,

Kamga contends that the circuit court erred in (1) precluding him from introducing evidence of

third-party guilt until after the defendant had testified "because it precluded cross-examination of

the third party during the Commonwealth's case-in-chief"; (2) precluding him from introducing

"more specific evidence of bias and motive of the Commonwealth's witness"; (3) overruling his

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The sentencing order entered October 24, 2022, identifies only Code § 18.2-36 as the
code section related to the involuntary manslaughter conviction, omitting reference to Code
§ 18.2-279.  To the extent that this is a clerical mistake "arising from oversight or from an
inadvertent omission," it "may be corrected by the [circuit] court at any time on its own initiative
or upon the motion of any party and after such notice, as the court may order."  Code
§ 8.01-428(B).

relevance objection "to the Commonwealth's question regarding the relationship between 'the police and young African-American men' in July 2020"; and (4) ruling that the evidence was sufficient to support his convictions. For the following reasons, this Court affirms the circuit court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

I. The Shooting

On the evening of July 7, 2020, Kamga, Wayne Starks, and their mutual friend, Kendall Smith, were in Smith's basement "hanging out, drinking and making music." They all became intoxicated consuming marijuana and two pint-sized bottles of brandy mixed with Xanax.[2] After recording music for two hours, Kamga discharged a firearm and fatally shot Starks.

At the time of the shooting, Kamga was seated at a computer while Smith stood beside him at a microphone and Starks stood behind and between them. Immediately after the shooting, both Kamga and Smith tried to help Starks and tried to stop the bleeding from Starks's neck. Kamga and Smith carried Starks upstairs and outside to a car to take him to the hospital.

The police arrived when Kamga was in the back seat of a car holding Starks and applying pressure to the gunshot wound on his neck. Paramedics arrived minutes later. Starks was transported to the hospital, where he died from the gunshot wound.

The medical examiner opined that Starks's gunshot wounds were not self-inflicted because "[i]t would have been impossible for Mr. Starks to pull the trigger himself." The medical examiner determined that the bullet initially entered Starks's right arm above his elbow,

_____

[2] Xanax is "an anti-depressant and anti-psychotic medicine."

- 2 -

exited his right upper arm, reentered the right side of his neck, and exited the back of his neck. Based on the gunshot residue on Starks's skin, the medical examiner estimated that the muzzle of the gun was fifteen to eighteen inches from Starks's arm when the bullet was discharged from the gun. The medical examiner also determined that the bullet traveled from the right side of Starks in an upward direction. Given the trajectory of the bullet and the distance between Starks and the muzzle of the firearm, the medical examiner determined that Starks could not have shot himself.

## II. Kamga's Pretrial Statements

A. <u>Kamga's Statements to Police</u>

On the night of the shooting, Kamga told the police that the shooting occurred in a small room in Smith's basement when only he, Smith, and Starks were in the room. Kamga said that he heard, but did not see, the shooting as he sat audio engineering on the computer while Smith and Starks were standing. Kamga explained that Starks was standing behind him to his left when he heard the gunshot. Kamga stated that Smith was also to his left and Starks was behind them.

Kamga denied firing a gun that night but admitted that he touched a handgun that he previously brought to Smith's house to sell to Smith. Kamga reported that earlier that night, he and Smith discussed a payment plan for the handgun purchase.

Kamga reported that after he heard a gun go off, he turned and saw Starks bleeding from his neck. Kamga stated that he did not see the gun and did not know where the gun was at that time. Kamga immediately tried to stop the bleeding by applying pressure to Starks's neck with a piece of clothing. Then they carried Starks upstairs to take him to the hospital.

During his interview with police, Kamga submitted to a gunshot residue (GSR) test on his hands. The police noted that Kamga had blood on his hands when the GSR test was done.

The police reapproached Kamga and questioned him again after learning that medical evidence showed Starks's gunshot wound was not self-inflicted. Kamga repeated that he only heard the gunshot and did not know what happened.

Kamga acknowledged to police that he could see Smith completely at the time of the shooting. When an officer asked Kamga whether he "would have absolutely 100% been able to tell whether [Smith] had a gun or not," Kamga replied, "Yes. He did not—he did not have a gun." When a second officer questioned Kamga about a gun and a bag of Xanax that police found outside the basement window, Kamga denied knowing anything about that gun.

When police asked Kamga whether he had consumed any marijuana, alcohol, or Xanax, Kamga stated that he had some marijuana the day before and "a couple sips" of alcohol that night. Kamga denied being under the influence of any intoxicant at the time of his police interview.

B.  Kamga's Statements to Smith

Before meeting at Smith's house on July 7, 2020, Kamga had accepted Smith's offer to buy his handgun, but Smith had yet to purchase the gun at the time of the shooting. Kamga admitted to Smith that he was holding the handgun in his hand when Starks was shot. Kamga also told Smith that if the GSR test showed that he had gunshot residue on his hands, he would tell the police that he tried to take the gun away from Starks just before Starks pulled the trigger and shot himself.[3]

---

[3] A GSR expert testified at trial that GSR was not found in Kamga's sample, but GSR could have been removed when blood flowed on Kamga's hands or when he rubbed his hands on a towel; or the blood on his hands could have covered GSR, putting the microscopic GSR below the surface of the sample.

## III. Circuit Court Proceedings

### A. Commonwealth's Motion *in Limine*

The Commonwealth filed a motion *in limine* to "Limit Prior Specific Bad Acts and Improper Impeachment Evidence." Specifically, the Commonwealth moved the circuit court to order Kamga to refrain from making any reference before the jury to any alleged bad act by Smith and any hearsay statements alleging the victim's feelings towards Smith. In support of its motion *in limine*, the Commonwealth proffered:

> Upon information and belief, Defendant will be mounting his defense by suggesting that Kendell Smith is the individual who killed [the] victim even though when interviewed after the incident Defendant stated "with 100% certainty" that Mr. Smith did not have a firearm in his hand prior to the shooting.

> Upon information and belief, Defendant will pursue this defense by attacking the character of Mr. Smith by alleging bad acts and suggesting that the victim previously made hearsay statements regarding his fear of the Commonwealth's witness.

The Commonwealth argued that evidence of alleged bad acts by Smith and hearsay statements that Starks feared Smith were not relevant. The Commonwealth contended that Smith's alleged bad acts were irrelevant because there was no allegation that the shooting was intentional and Kamga's statements to police excluded Smith as the shooter. The Commonwealth also argued that the hearsay statements about Starks's alleged fear of Smith were not admissible under any exception to the hearsay rule. Additionally, the Commonwealth contended that hearsay statements about Starks's alleged fear of Smith had no bearing on Smith's credibility as a witness; thus it would be improper impeachment for Kamga to question Smith about the statements.

At the hearing on the Commonwealth's motion *in limine* on March 11, 2022, the circuit court inquired of Kamga, "[I]s your theory of defense going to be to pin it on this other guy, Kendall Smith?" Kamga responded that under *Ramsey v. Commonwealth*, 63 Va. App. 341, 354

(2014), evidence of third-party guilt is admissible "once the appropriate nexus between a third party and the offense at bar is established." Kamga then contended that it would be error to exclude statements of a deceased victim. Kamga agreed that he would have to establish a foundation under *Ramsey* before he could pursue a line of questioning or introduce evidence or argument implying that Smith was the shooter.

The circuit court pronounced from the bench, citing *Karnes v. Commonwealth*, 125 Va. 758 (1919), that, "Only when the proffered evidence tends clearly to point to some other person as a guilty party will such proof be admitted." Regarding the admissibility of evidence of Smith's prior bad acts, the circuit court pronounced that such evidence must be relevant and "close in contact in time and . . . related to . . . the offense that is at issue." The court withheld ruling on the admissibility of any evidence but ruled—as both parties had agreed—that Kamga was "not allowed to bring any of that up during Opening Statement."

By order entered March 31, 2022, the circuit court granted the Commonwealth's motion only in reference to opening statements, specifically barring Kamga from mentioning (a) alleged bad acts by Smith, (b) hearsay statements about the victim's alleged feelings towards Smith, and (c) third-party guilt. The order also admonished Kamga that he may introduce evidence or argument regarding third-party guilt "only after the nexus required which tends to point directly to another person as the perpetrator." Finally, the order states that "this ruling only applies to the opening statements" and Kamga "must address [the issue] with the Court outside the presence of the jury" before introducing any evidence or arguments about third-party guilt, prior bad acts, or hearsay statements of the victim.

On April 1, 2022, the circuit court held a hearing on Kamga's written motion for clarification of the ruling on the Commonwealth's motion *in limine*. The circuit court noted that it would revisit the issue because Kamga's motion included proffers of evidence that were not

previously presented to the court. After Kamga clarified and supplemented his written proffers, the Commonwealth played a video showing Kamga telling the police that he was 100% certain that Smith was not holding a gun when Starks was shot. Following arguments by both parties, the circuit court decided not to change its order regarding third-party guilt. The court directed Kamga, "You cannot mention third party guilt in your Opening Statement unless on Monday morning [before trial] you give me specifically and the Commonwealth specifically what you would say in Opening Statement that correlates to explaining that video and what Mr. Kamga saw." Following this pronouncement, the circuit court asked both parties whether they disagreed. Kamga, by counsel, replied, "No, I agree, Judge."

The circuit court further ruled that Kamga would be allowed to cross-examine Smith to try to demonstrate that he was biased based on a desire to help himself in his own pending criminal cases in the circuit court. The court also ruled that Kamga could ask whether Smith was testifying for consideration on his pending charges, how much time Smith was facing, if convicted, and how many times Smith's case had been continued. But the circuit court ruled that Kamga would not be allowed to mention the specific facts related to the pending charges because such information would not be relevant to bias.

Following the court's bench ruling restricting Kamga's impeachment of Smith, Kamga, by counsel, stated, "And, Judge, I agree with you a hundred percent. That is perfectly articulated." The circuit court added that because the specific nature of the pending charges had no bearing on bias, Kamga could not mention the specific nature of the charges without first having a sidebar conference outside the jury's presence. Kamga, by counsel, responded, "And I agree, Judge. I was not going to go into that."

By order entered April 1, 2022, the circuit court recorded the bench ruling pronounced at the hearing on that date. Based on the video evidence of Kamga definitively stating to police

that Smith did not have a gun when Starks was shot, "the Court ruled that unless [Kamga] notifies the Court prior to opening statement that he intends to take the stand and explain these statements and inform the jury that he actually saw Mr. Smith fire the weapon; he was prohibited from mentioning third-party guilt in opening statement." The circuit court also clarified its prior order as follows:

> ORDERED that Defendant may inquire of any witness the Commonwealth calls as to bias and motive to testify with the following limitations:
> 1. Defendant may inquire what the witness expects to gain in exchange for testimony;
> 2. Regardless of the answer of the witness, Defendant may inquire if he has pending criminal charges which have yet to be adjudicated;
> 3. Defendant may inquire as to how many times these charges have been continued;
> 4. Defendant may inquire as to how much time the witness believes he is facing but may not state the actual time he knows the witness to be facing;
> 5. Defendant may not mention the specific charges witnesses are facing nor examine the specific bad acts alleged to have been committed by any witness.

At trial, Kamga cross-examined Smith about a criminal charge against Smith with an alleged offense date in June 2020—before the shooting—and still pending in the circuit court at the time of Kamga's trial. Smith testified that he did not know whether this was a long time for a charge to be pending because it was his "first time being in the system." When Kamga asked Smith whether he believed that the Commonwealth would give him consideration regarding his pending charges in exchange for his testimony against Kamga, Smith testified, "I am not coming up here trying to get anything for what I am doing. I am just trying to tell the truth of what really happened." In response to Kamga's further questioning, Smith testified that he did not bring up his pending charges with the police or prosecutors.

The circuit court sustained the Commonwealth's objection when Kamga asked Smith on cross-examination whether the Commonwealth had to obtain a search warrant for a GSR test on

Smith before Smith submitted to the test. The circuit court ruled that Kamga could recall Smith and put this question to him "[o]nce [Kamga has] reached the threshold of [the court's] prior ruling."

On the second day of trial, before the Commonwealth rested its case-in-chief, the circuit court reiterated that Kamga would be allowed to present evidence of third-party guilt in his defense case if the legal elements were met, as stated in the court's prior rulings.

At the conclusion of Kamga's testimony, the circuit court informed the parties that the court found that Kamga had "crossed the threshold" to present evidence of third-party guilt if he wanted to do so, and to argue third-party guilt in closing argument to the jury. The court stated that this finding was based on (i) Smith's testimony that he only recently told the Commonwealth that Kamga admitted in July 2020 that he was holding the gun when Starks was shot, (ii) evidence of Smith's demeanor and behavior on the night of the shooting, including washing his hands before the GSR test, and (iii) Kamga's testimony explaining what he meant when he told the police that Smith did not have a gun when Starks was shot. Kamga testified that at the time of the shooting, he was standing, leaning over the computer, when he heard a gunshot, then heard Smith yell, "Wayne shot himself," and then turned around and saw Starks bleeding with the gun on the floor. Kamga testified that when he told the police that Smith didn't have a gun when Starks was shot, he meant that he didn't see Smith with the gun in his hand because he was staring down at the computer and "was not able to see exactly what [Smith] was doing, what was going on."

After the court ruled that Kamga could introduce additional evidence of third-party guilt, Kamga rested his case without presenting additional evidence.

B. Admission of Testimony About Police Relations with African-American Men

Kamga objected at trial when the Commonwealth asked Smith, "[W]ould you say that July of 2020 was the time when relationships with the police and young African-American men in this country was sort of in question?" Kamga argued at a bench conference that information related to "cultural racial tensions back two years ago" was irrelevant because "the Defendant is Black, the victim is Black, and the witness is Black."

The Commonwealth responded that the information was relevant because Smith was expected to testify that his own reactions to police on the night of the shooting were influenced by the recent death of George Floyd in May 2020. The Commonwealth expected Smith to explain that he had reacted to his perception that the police were falsely accusing him of shooting Starks. The Commonwealth offered to withdraw the question if Kamga agreed not to raise questions or make allegations regarding Smith's conduct on the night of the shooting.

The circuit court found that the information was relevant and overruled Kamga's objection. The circuit court ruled that "[t]he Commonwealth is allowed to ask the question to explain [Smith's] behavior to law enforcement that night based on what the Defense [alluded] to in the Opening Statement." Kamga implied in his opening statement that Smith, not Kamga, shot Starks.

When the Commonwealth resumed its direct examination of Smith, the Commonwealth asked, "Did anything happen in the United States that you are aware of in May of 2020 that may have influenced your relationship with law enforcement on that evening?" Smith answered,

> That was back at the time when the whole George Floyd situation was going on. But not even necessarily just the George Floyd situation. If anybody has common sense of what is going on today in this world police and Black men, there is not a good relationship with them two right there.

The Commonwealth further inquired, "And that may have influenced your behavior, would you say?" Smith replied, "Yes, sir. No doubt." Smith further testified that his angry behavior on the night of the shooting—including his initial refusal to take a GSR test—was influenced by the facts that the police treated him as if he had shot Starks and wouldn't let him go to the hospital to be with Starks.

C. Denial of Motions to Strike

Kamga moved to strike the evidence after the Commonwealth rested its case-in-chief. Kamga contended that the evidence failed to prove that the firearm was discharged in such a manner as to endanger life, although it caused a fatality. Kamga also argued that the evidence failed to prove that the firearm was *not maliciously* discharged, and thus failed to prove it was *unlawfully* discharged as opposed to maliciously discharged. Kamga further argued that the evidence failed to prove that criminal negligence was the proximate cause of Starks's death. Finally, Kamga argued that evidence that he was intoxicated and handled a firearm was insufficient to prove reckless handling of a firearm or criminal negligence, i.e., "gross, wanton and culpable" conduct. The circuit court ruled that the evidence was sufficient for a jury decision on both charges and denied the motion to strike.

After the Commonwealth rested its case, Kamga told the circuit court, "I just renew my [m]otion to strike." Kamga did not elaborate or present any arguments. The circuit court ruled,

> After hearing all the testimony from both sides and prior
> arguments renewed by the Motion to strike, for the reasons stated
> before, I am going to deny the Motion to strike, that the
> Commonwealth has demonstrated a *prima facie* case for the case to
> go forward to the jury and so I am going to deny the Motion to
> strike.[4]

---

[4] Although Kamga's pro forma renewed motion to strike would ordinarily be insufficient to preserve for appeal the arguments from his original motion to strike, the circuit court's ruling on the record shows that in denying the renewed motion, the court was ruling on the arguments presented in the original motion. *See Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 80 n.5 (2010) ("[P]roperly understood a 'renewed' motion to strike is a new motion asking the trial

D.  Jury Verdict, Motion to Set Aside Verdict, and Sentencing

The jury convicted Kamga on both charges.  Kamga filed a post-trial motion to set aside the verdict challenging some evidentiary rulings and contending that the evidence was insufficient to sustain both convictions.  On October 3, 2022, the circuit court held a hearing on Kamga's motion to set aside the verdict.  By order entered October 5, 2022, the circuit court denied Kamga's motion to set aside the verdict "for the reasons stated on the record in open court."  Kamga did not file the transcript of the October 3, 2022 hearing.

On the involuntary manslaughter conviction, the circuit court sentenced Kamga to incarceration for ten years with five years suspended.  On the conviction for reckless handling of a firearm, the court sentenced Kamga to incarceration for 12 months with 12 months suspended.  This appeal followed.

ANALYSIS

I.  The circuit court did not prevent Kamga from examining Smith about facts implicating Smith in the shooting.

Kamga contends that the circuit court "erred in limiting or failing to permit [him] from putting on evidence of third party guilt" because it prevented him from cross-examining Smith about events described in Kamga's "motion to clarify."  Kamga does not identify these events in his opening brief, but he indicates that the events include evidence of flight from which Smith's guilt can be inferred.[5]  This Court finds that the circuit court did not prevent Kamga from examining Smith about Smith's alleged flight or any other facts implicating Smith in the shooting.  Under the circuit court's ruling, Kamga could have cross-examined Smith about his

_____

court to apply a prior challenge to the sufficiency of the Commonwealth's case to all the evidence.").

[5] *See* Rule 5A:19(e) ("Attempts to incorporate arguments made below by reference to pleadings, motions, memorandum, or other filings are prohibited.").

alleged guilt if Kamga had proffered his anticipated evidence explaining his own recorded statement to police excluding Smith as the shooter. At the hearing on the Commonwealth's motion *in limine*, Kamga, by counsel, told the court, "Judge, based upon the procedurals and the case law is that it has to be a proffer by the Defendant obviously before getting into any line of questioning or argument" about third-party guilt. At a subsequent hearing, after the circuit court pronounced its clarified ruling requiring a proffer before Kamga could reference third-party guilt in the jury's presence, the circuit court asked both parties whether they disagreed. Kamga, by counsel, replied, "No, I agree, Judge."

The circuit court also gave Kamga an opportunity to examine Smith about his alleged guilt during Kamga's case in defense. The circuit court did not release Smith after he testified for the Commonwealth so that Kamga could recall him as a witness. After Kamga testified, the circuit court found that Kamga had "crossed the threshold" to present evidence of third-party guilt if he wanted to do so, and to argue third-party guilt in closing argument to the jury. Although Kamga was permitted to recall Smith to examine him about his alleged guilt, Kamga rested his case without calling Smith as a witness.[6] Therefore, the record shows that the circuit court did not prevent Kamga from examining Smith about facts implicating Smith in the shooting.

II. The circuit court did not err in restricting Kamga's impeachment of Smith.

Kamga contends that the circuit court's ruling restricting his impeachment of Smith prevented him from introducing specific evidence of Smith's bias and motive. Specifically,

---

[6] At the outset of Kamga's case at trial, he introduced video evidence from police body-worn cameras depicting Smith's and Kamga's interviews and interactions with police on the night of the shooting. The videos established that Smith disobeyed police commands to remain inside the residence, washed his hands despite instructions not to do so, rebuked his girlfriend for calling 911, and accused officers of suspecting him of shooting Starks only because he was Black.

Kamga argues that he should have been permitted to examine Smith about the nature of Smith's pending felony criminal charges. The circuit court's clarified ruling on the Commonwealth's motion *in limine* allowed specified impeachment of Smith, but disallowed Kamga's reference to the specific facts related to Smith's pending charges because such information was not relevant to bias. Following the court's bench ruling, Kamga, by counsel, stated, "And, Judge, I agree with you a hundred percent. That is perfectly articulated." The circuit court then added that because the specific nature of the pending charges had no bearing on bias, Kamga could not mention the specific nature of the charges without first having a sidebar conference outside the jury's presence. Kamga, by counsel, responded, "And I agree, Judge. I was not going to go into that."

Given Kamga's contemporaneous approval of the circuit court's ruling, this Court finds that Kamga did not preserve this issue for appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty *at the time of the ruling*, except for good cause shown or to enable this Court to attain the ends of justice." (emphasis added)).[7] Moreover, "[u]nder settled principles, a criminal defendant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'" *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). Therefore, this Court cannot consider the merits of Kamga's second assignment of error.

---

[7] Kamga's objection to the circuit court's ruling regarding impeachment in his post-trial motion to set aside the verdict does not constitute a contemporaneous objection for purposes of Rule 5A:18 because it did not give the circuit court an opportunity to take corrective action at trial.

III. The circuit court did not err in overruling Kamga's relevance objection to evidence of police relations with young African-American men in July 2020.

Kamga contends that the circuit court erred in overruling his relevance objection to Smith's testimony about police relations with young African-American men at the time of the shooting in July 2020.[8] We disagree. Evidence is relevant when it helps the jury determine whether a disputed fact is more or less likely to be true. *See, e.g.*, *King v. Commonwealth*, 77 Va. App. 748, 764 (2023). In disputing the charge that he shot Starks, Kamga alleged that Smith's hostility toward police on the night of the shooting was evidence of Smith's consciousness of guilt as the shooter. Evidence providing an alternative explanation for Smith's attitude and conduct towards police would make it less likely that Smith exhibited consciousness of guilt after the shooting. Smith's perception of police relations with African-American men in July 2020 provided context and an alternative explanation for Smith's hostile reactions to police directives on the night of the shooting. Therefore, Smith's testimony about police relations with African-American men was relevant, and the circuit court did not err in overruling Kamga's relevance objection.

IV. The evidence is sufficient to sustain Kamga's convictions.

When an appellant challenges the sufficiency of the evidence to support a criminal conviction, this Court "reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). At issue on appeal is "whether any rational trier of fact could have found the essential

---

[8] Kamga also argues that the admission of Smith's testimony about police relations with African-American men improperly bolstered Smith's credibility. Because Kamga assigned error only to the overruling of his relevance objection, we cannot consider this additional alleged error. *See Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017) ("[A]ssignments of error set analytical boundaries for the arguments on appeal.").

- 15 -

elements of the crime beyond a reasonable doubt." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).  The circuit court's judgment will be affirmed "unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021); *see also* Code § 8.01-680.

"When 'credibility issues have been resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Testimony is inherently incredible as a matter of law only if it is "either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

A. Sufficient Evidence of Involuntary Manslaughter

1. *Sufficient Evidence that Kamga was the Shooter*

Kamga contends that the evidence is insufficient to sustain his conviction for involuntary manslaughter under Code § 18.2-279 because the evidence failed to prove that he was the shooter.[9]  We disagree.  A rational juror could accept the medical examiner's testimony that Starks was eliminated as the shooter based on the trajectory of the bullet and the estimated distance between Starks and the muzzle of the gun at the time of the shooting.  A rational juror

---

[9] Kamga did not contend in his motions to strike that the evidence was insufficient to prove that he was the shooter, but he raised this argument in his motion to set aside the verdict. The circuit court's order denying Kamga's motion to set aside the verdict states that the court denied the motion "for the reasons stated on the record in open court" at the October 3, 2022 hearing.  Kamga did not file a transcript of the October 3, 2022 hearing, but we conclude that as to the sufficiency issue, this missing transcript is not indispensable for our review of the circuit court's order denying the motion to set aside the verdict because the evidence in the trial transcript fully supports the circuit court's ruling.

could also accept Smith's testimony that Smith was not the shooter and that Kamga admitted to him that Kamga discharged the firearm. Thus, by process of elimination, a rational juror could conclude from the evidence that Kamga was the shooter since there were only three people in the room at the time of the shooting. A rational juror could also reasonably infer that Kamga was the shooter based on (i) the evidence that Kamga was seated to the right of Starks and Smith was standing to Starks's left at the time of the shooting and (ii) the medical examiner's testimony that the bullet traveled from the right side of Starks in an upward direction.

2. *Sufficient Evidence of the Requisite Intent*

Kamga contends that the evidence is insufficient to sustain his conviction for involuntary manslaughter under Code § 18.2-279 because the evidence failed to prove that the shooting "was so gross, wanton, and culpable as to show a reckless disregard of human life." Again, we disagree. A rational juror could find from the evidence that it was necessary to apply 6.75 pounds of pressure to the trigger before the gun would fire. A rational juror could further find that Kamga, while under the influence of Xanax-laced brandy, applied the requisite pressure to the trigger of his gun and fired the gun in a confined space in very close proximity to two other people. From the evidence about the trajectory of the bullet that struck Starks, a rational juror could infer that the gun was pointed toward Starks when Kamga applied the requisite pressure to the trigger to discharge the firearm. From the foregoing, a rational juror could conclude that Kamga's conduct in discharging his firearm was so gross, wanton, and culpable as to show a reckless disregard of human life.

B. <u>Sufficient Evidence of Reckless Handling of Firearm</u>

In addition to Kamga's contention that the evidence was insufficient to prove he was the shooter, Kamga argues that the evidence was insufficient to prove that he recklessly handled the gun. This Court's holding in *Darnell v. Commonwealth*, 6 Va. App. 485 (1988), "established

that 'reckless' conduct proscribed in a firearm statute could be less culpable than the conduct necessary for involuntary manslaughter. However, it must be more than that necessary for ordinary negligence." *Mangano v. Commonwealth*, 44 Va. App. 210, 217 (2004). As explained above, a rational fact-finder could find from the evidence that Kamga's conduct in discharging the gun was so gross, wanton, and culpable as to show a reckless disregard of human life. Thus, the evidence is sufficient to support a finding that Kamga recklessly handled his firearm.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*