COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, McClanahan and Petty
Argued at Salem, Virginia


SHIRLEY ANN FLOWERS

                                                    OPINION BY

v.      Record No. 2158-05-3          JUDGE ROBERT J. HUMPHREYS
                                            JANUARY 16, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Malfourd W. Trumbo, Judge

      (Rena G. Berry; Andrea Muse, on brief) for appellant.  Appellant
      submitting on brief.

      Robert H. Anderson, III, Senior Assistant Attorney General
      (Robert F. McDonnell, Attorney General, on brief), for appellee.


Shirley Ann Flowers ("Flowers") appeals her conviction, following a bench trial, of

reckless endangerment, in violation of Code § 18.2-371.1(B)(1).  Flowers contends that the trial

court erred in finding that the evidence was sufficient to prove that she acted "willfully" and in

"reckless disregard of the life of another" within the meaning of Code § 18.2-371.1(B)(1).  For

the following reasons, we disagree, and therefore affirm the conviction.

BACKGROUND

When considering the sufficiency of the evidence on appeal of a criminal conviction, we

view the evidence "in the light most favorable to the Commonwealth and grant all reasonable

inferences fairly deducible therefrom." Ellis v. Commonwealth, 29 Va. App. 548, 551, 513

S.E.2d 453, 454 (1999).  So viewed, the evidence established the following.

On January 17, 2004, A.W.[1] was spending the weekend with her mother, Kimberly Custer ("Custer"). A.W. made plans to spend the night with E.L., her friend and next-door neighbor. However, at some point in time, A.W. and E.L. decided to spend the night at Flowers' house with Flowers' daughter, M.F.[2] When A.W. arrived at Flowers' home for the evening, Flowers was asleep on the couch. A.W. went to M.F.'s bedroom, where M.F., her boyfriend, and E.L. were "hanging out." At some point in time, A.W. took four Ambien sleeping pills. A.W. remembers going to sleep, getting sick, and being unable to stand up.

Sometime between ten and twelve o'clock that night, Flowers went upstairs to check on the children.[3] After seeing the children looking "very sleepy" and disoriented, Flowers called her daughter's fiancé, Jason Setchall ("Setchall"), and told him that she had "an emergency." She asked him to come over and check on the kids upstairs because "something seemed wrong."

---

[1] At the time, A.W. was fourteen years old. The other individuals, referred to by their initials, were also juveniles.

[2] Custer testified that A.W. told her of the change in plans, however she did not check with Flowers because the girls spent the night at one another's house on a regular basis. A.W. also indicated to her mother, and at trial, that she spoke with Flowers who told her it was okay for her to stay the night. However, Flowers testified that she told A.W. that she could not spend the night, as she did not have enough room to entertain that many children. To the extent that there is a discrepancy in the testimony, we must reconcile it in favor of the Commonwealth. See Barrett v. Commonwealth, 268 Va. 170, 179, 597 S.E.2d 104, 108 (2004) ("In accordance with familiar principles, we will state the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial.").

[3] Flowers testified that she had been up to check on the children earlier, and found them smoking cigarettes. She also testified that when she confiscated the cigarettes, A.W. told her that she was leaving to "find more drugs." As the trial court noted, this testimony was in direct conflict with portions of Flowers' earlier testimony in which she stated "why would she tell me they were going out to get drugs when she knew I wouldn't want them there." In any event, we must view the evidence in the light most favorable to the Commonwealth. Barrett, 268 Va. at 179, 597 S.E.2d at 108.

When Setchall arrived, sometime between ten and twelve o'clock, he noticed that the children[4] were huddled around each other "staring at the floor" and that one of the girls was "drooling out of the mouth." Setchall told Flowers "they're obviously on something; you need to go ahead and get them checked out."

Instead of calling 911, Flowers called Ricky Waid ("Waid"), A.W.'s father. Flowers placed this call between 3:00 and 3:30 a.m., at least three hours after Setchall advised her that the children needed medical attention. Moreover, although A.W. was visiting her mother, who lived in the same complex, Flowers did not call her to tell her that something was wrong with A.W. Instead, she called Waid who lived "less than thirty minutes away" and who had physical custody of the child. Flowers told Waid that she believed A.W. had taken something and that she needed medical attention. However, Flowers asked him not to call his ex-wife, Custer, or the police, because she did not "want a bunch of hoopla" at her apartment. She indicated that Custer would only make the situation worse and that she did not "want the police involved." When Waid arrived, he found his daughter in M.F.'s room awake, but unable to stand. He "ended up having to pick [A.W.] up and physically move her out of the house." Waid then drove A.W. to the hospital.

A.W. arrived at the hospital at 4:53 a.m., and Dr. Paul Haskins ("Haskins") evaluated her within ten minutes of her arrival. Based on A.W.'s representation of her condition, Haskins treated her for possible ingestion of Ambien. A.W.'s exam indicated that she was "extremely tachacardic, or she had a very high heart rate." Dr. Haskins testified that tachacardia is "dangerous if it [is] prolonged" and could possibly "create a heart attack." Dr. Haskins also

---

[4] The record is unclear as to how many children were actually in the room at the time. However, the record is clear that Flowers' daughter, Flowers' daughter's boyfriend, and A.W. were in the room.

testified that, in hindsight, A.W. had not suffered a serious injury. However, at the time of her presentation at the emergency room, she "absolutely" had the potential for such injury.

A grand jury indicted Flowers on three counts of reckless endangerment, in violation of Code § 18.2-371.1(B)(1).[5] During trial, the court and Flowers had the following dialog:

> COURT: Your testimony from what I can remember [was that] . . . your major concern was to take care of the kids . . . . You had asked [Waid] not to call . . . [and you] wanted him to take kids to the hospital.
>
> FLOWERS: Right.
>
> COURT: Okay.
>
> FLOWERS: I didn't want to take any chances. When you're dealing with teenagers, teenagers are taking Ecstasy, I found out the other day they were mixing Viagra with Ecstasy.
>
> COURT: Alright, was there any indication . . .
>
> FLOWERS: They're killing themselves.
>
> COURT: Was there any indication to you that she was in need of hospitalization?
>
> FLOWERS: No. Because I really don't know the child.
>
>      *  *  *  *  *  *  *
>
> COURT: Okay. Well let me ask you this then. If you, you did not know how she reacted, I believe is what you just testified to. You wanted [Waid] to take her to the emergency room because you didn't know what they had been having, they may have mixed drugs or whatever. At that juncture, not knowing what was going on, why didn't you call 9-1-1?
>
> FLOWERS: I didn't see the need.
>
> COURT: Well . . .

---

[5] The Commonwealth moved to *nolle prosequi* two counts on the day of trial. The trial court granted the motion.

- 4 -

FLOWERS: I, these kids were, you'd had to have been there, Your Honor, these kids were coherent. They were walking, talking, they didn't really seem like they had anything wrong with them, but I didn't want to take the chance on maybe they took something. You know, I didn't want to take that chance.

COURT: Ms. Flowers, that's the reason I asked you the question about the hospitalization. You wanted them to go to the hospital. You didn't want them to be checked by a doctor tomorrow, you wanted them, on your own testimony, your major concern was to take care of the kids . . . [you] wanted [Waid] to take them to the hospital.

FLOWERS: Right, I asked him to take them straight . . .

COURT: If it's that dire need, Ms. Flowers, why didn't you call 9-1-1 because of the time frame it would take, you didn't know how long it was going to take him to get there.

On September 1, 2005, the trial court convicted Flowers of one count of reckless endangerment, and sentenced her to three years, with all but two months suspended. Flowers appeals.

ANALYSIS

On appeal Flowers contends that the evidence was insufficient to prove she acted "willfully" and "in reckless disregard" of another's life. For the following reasons, we disagree.

When the sufficiency of the evidence is challenged on appeal, the judgment of the trial court will not be set aside unless it appears from the evidence that the judgment is "plainly wrong or without evidence to support it." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Also, "[g]reat deference must be given to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1988).

Flowers was convicted of violating Code § 18.2-371.1(B)(1), which provides in relevant part as follows:

Any parent, guardian or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a

- 5 -

reckless disregard for human life shall be guilty of a Class 6 felony.

Thus, to support a conviction for felony child neglect, the Commonwealth must establish that the defendant, through her willful act or omission, created a situation placing the child at risk of actual physical harm. Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 110 (2004).

A willful act is one "'which is intentional, or knowing, or voluntary, as distinguished from accidental.'" Ellis, 29 Va. App. at 554, 513 S.E.2d at 456 (quoting Snead v. Commonwealth, 11 Va. App. 643, 646, 400 S.E.2d 806, 807 (1991)); see also Morris v. Commonwealth, 272 Va. 732, 738, 636 S.E.2d 436, 439 (2006) ("[T]he term willful, as used in the statute, refers to conduct that 'must be knowing or intentional, rather than accidental, and [undertaken] without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose.'"). "The act necessarily implies 'knowledge that particular conduct will likely result in injury or illegality.'" Mangano v. Commonwealth, 44 Va. App. 210, 214, 604 S.E.2d 118, 120 (2004) (quoting Ellis, 29 Va. App. at 554, 513 S.E.2d at 456). In other words, "the defendant must have been aware that [the] conduct was likely to result in serious injury." Id. at 215, 640 S.E.2d at 121 (citing Collado v. Commonwealth, 33 Va. App. 356, 366, 533 S.E.2d 625, 630 (2000) (shaken baby syndrome)).

Moreover, Code § 18.2-371.1(B)(1) does not require a showing of actual injury or death. Rather, it proscribes conduct that is so "gross, wanton and culpable" as to demonstrate a "reckless disregard" for the child's life. See Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004). "Such 'reckless disregard' can be shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life." Id.; see also Barrett, 268 Va. at 186, 597 S.E.2d at 112.

In this case, even though Flowers believed that the children had taken something and that they needed immediate medical attention, she failed to call 911 or to take any other prompt action to secure medical attention for A.W. Specifically, Flowers waited three hours to call Waid. Moreover, she requested that Waid refrain from calling the police or the child's mother, who lived nearby, in order to avoid "any hoopla." In ruling from the bench, the trial court indicated that it was this omission — the deliberate decision to not call 911 or otherwise secure prompt medical attention — that constituted the willful act.

Clearly, Flowers made the decision to call Waid instead of emergency medical services. Her failure to do so was not "accidental." Flowers called Waid at least three hours after Setchall advised her of his opinion that the children had "taken something" and needed to be "checked out." At that point, instead of notifying the parent who lived in the same apartment complex, she opted to call Waid, who lived considerably farther away. Moreover, Flowers elected not to call the 911 emergency number, or otherwise secure medical assistance, even though she knew that A.W., along with M.F. and her boyfriend, had ingested some type of drug. As evidenced by her testimony and her request that the children be taken to the hospital, Flowers knew that ingesting drugs was likely to cause serious injury.

On the evidence before us, the trial court was entitled to consider the fact that Flowers could have sought immediate medical assistance for A.W. by either taking the child to a medical care provider, calling 911 for emergency services, or by promptly alerting the child's mother who lived nearby. Instead, Flowers chose to call the child's father who lived some distance away. Moreover, Flowers specifically asked him not to call either the child's mother or the police. Under the totality of the circumstances this record presents and when considered in the light most favorable to the Commonwealth as the prevailing party below, we hold that a reasonable fact finder could find that Flowers' actions and deliberate inaction "created a situation

- 7 -

placing the child at risk of actual physical harm." Barrett, 268 Va. at 183, 597 S.E.2d at 110. Thus, we cannot say that the trial court's classification of this type of behavior as a willful omission for purposes of Code § 18.2-371.1(B)(1) is "plainly wrong or without evidence to support it." Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

With respect to the "reckless disregard" element of Code § 18.2-371.1(B)(1), as already noted, Flowers admitted to the trial court that she suspected that the children had taken some type of drug. In fact, Flowers testified that Setchall told her that the teenagers were probably on something and that they should be checked out. Thus, Flowers was aware that ingesting prescription or illicit drugs could pose a substantial risk for serious injury or death.

Moreover, although Dr. Haskins indicated that in hindsight A.W. did not sustain a life threatening injury, he also indicated that at the time, her condition had the potential to be life threatening. Thus, even though there was no actual injury, there was "a substantial risk of serious injury, as well as to a risk of death." Duncan, 267 Va. at 385, 593 S.E.2d at 215. Accordingly, we hold that the trial court's finding that Flowers' failure to act was in reckless disregard for A.W.'s life, is not "plainly wrong or without evidence to support it." Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

CONCLUSION

Flowers' willful act of failing to secure prompt medical attention for juveniles in her charge, despite her recognition that ingesting drugs can pose a substantial risk of serious injury or death, satisfies the requirement of a "willful act" in "reckless disregard for human life," as required by Code § 18.2-371.1(B)(1). Therefore, we hold that the evidence was sufficient to support Flowers' conviction of reckless endangerment, in violation of Code § 18.2-371.1(B)(1), and we affirm the judgment of the trial court.

Affirmed.