COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Chaney and Lorish
Argued at Salem, Virginia


TEIRRA SHANAE POINDEXTER

MEMORANDUM OPINION[*] BY
v.        Record No. 0799-23-3          JUDGE FRANK K. FRIEDMAN
JULY 23, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

Rachel E. Jackson (The Law Office of Rachel E. Jackson, PLLC, on
brief), for appellant.

Victoria Johnson, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


This case raises the question of whether a parent was properly held criminally

accountable for a shooting committed by her young child.  On the afternoon of September 16,

2020, Teirra Shanae Poindexter's ten-year-old son, N.P.,[1] shot and killed Carlos Jones.

Poindexter argues that the trial court erred when it convicted her of involuntary manslaughter for

the death of Jones, as well as for two counts of felony child neglect under Code § 18.2-371.1(B).

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Initials are used to protect the identity of the minor.

BACKGROUND[2]

A. Events leading to the death of Jones

On the morning of September 16, 2020, Poindexter took her five-year-old daughter, P.P., to school, then returned home and fell asleep. As of this date, Jones and Poindexter had been in a romantic relationship for about a year. The couple had a history of domestic abuse and violence. Poindexter was awakened at 11:00 a.m. by Jones. Poindexter and Jones then resumed an argument that had begun the day before, about Jones's birth certificate. Later, the verbal argument escalated, and Jones ultimately punched Poindexter in the face. In retaliation, Poindexter threw a pot of cold oil on Jones. Poindexter grabbed a kitchen knife, "to scare [Jones]." Poindexter subsequently armed herself with her gun and threatened Jones.

Poindexter used her phone to record a portion of the incident; the recording was admitted at trial. During the recording, Poindexter points the gun at Jones while Jones holds N.P., Poindexter's son, in front of him as a human shield. Throughout the recording Jones tells Poindexter that he just wants to leave. Poindexter, however, continues to make specific threats of harm to Jones, telling him: "I'll kill you, bitch . . . I want you dead . . . I'm going to hunt you mother fucking down, bitch. Watch me . . . I'm going to fucking kill you." Poindexter also asked N.P. where the bat was and threatened to "beat [Jones's] ass with a bat." Poindexter threatened to "send the video to Mr. Duncan," Jones's probation officer. Throughout the recording, Poindexter accused Jones of abusing her and threatened to kill him numerous times.[3]

---

[2] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] While Poindexter contends that the gun was unloaded during the exchange, this claim was disputed. The Commonwealth played the video of Poindexter's gun use and argued that the

With the argument still raging, Poindexter left the house to pick up P.P. from school, taking N.P. with her. Prior to leaving the house, N.P. told Poindexter that he saw Jones putting ammunition in the firearm. Upon hearing that information, Poindexter went back into the house, retrieved the loaded gun, returned to the car, and placed it in the glove compartment. When she returned home, Poindexter took her purse and the gun inside, placing the gun on the coffee table in the living room. Poindexter began to clean up the mess in the kitchen, from the oil she had thrown earlier.

Jones then entered the kitchen and started to argue with Poindexter again, and Poindexter threw bleach at Jones as he was lunging toward her. At Poindexter's insistence, P.P. ran upstairs and called the police. Five-year-old P.P. placed the call[4] and went downstairs again to get the home address from Poindexter, but Poindexter refused to speak to the dispatcher, leaving P.P. with the phone. Jones, realizing P.P. was on the phone with the police, grabbed P.P., snatched the phone from P.P.'s hand, and threw the phone outside. While he was holding P.P., Jones stabbed the couch with a knife. N.P. told Jones to let P.P. go, at which point Jones released P.P., but then moved toward Poindexter. N.P. told Jones to "leave [them] alone." N.P. then picked up the gun on the coffee table and shot Jones. After being shot, Jones ran out the door and collapsed on the street. The gunshot wound was fatal.

---

slide of the gun could be heard racking, as Jones urged Poindexter not to waste bullets. Viewing the evidence "in the 'light most favorable' to the Commonwealth," the gun was loaded at the time Poindexter pointed it at Jones and N.P. *Hammer*, 74 Va. App. at 231 (quoting *Cady*, 300 Va. at 329). Whether an instrument is a deadly weapon is a question of fact. *See Pannil v. Commonwealth*, 185 Va. 244, 254 (1946). An unloaded gun can certainly be highly dangerous in many circumstances, but it is not necessary for us to decide that question in this case because when the evidence is viewed in best light to the Commonwealth, the gun was loaded.

[4] The recording of that 911 call was admitted at trial.

B.  Poindexter's motions to strike and the trial court's verdict

At the conclusion of the Commonwealth's case-in-chief, Poindexter moved to strike the Commonwealth's evidence.  Poindexter argued that the evidence was insufficient to demonstrate that Poindexter had acted with the requisite negligence for involuntary manslaughter.  Poindexter argued that the Commonwealth failed to prove she acted with callous disregard for human life.  She also asserted that it was unforeseeable that N.P. would shoot Jones and that Jones's own actions—in provoking the dispute—were independent intervening and unforeseeable acts.  The Commonwealth responded by relying on *Bailey v. Commonwealth*, 229 Va. 258 (1985), and *Gallimore v. Commonwealth*, 246 Va. 441 (1993), arguing that N.P.'s conduct was reasonably foreseeable due to Poindexter's own actions throughout the day, including Poindexter returning to the scene of a volatile situation with both her children and placing a loaded firearm within easy reach of a child—after professing her desire to see Jones dead.

As to the child abuse and neglect charges, Poindexter argued that the Commonwealth had failed to prove that Poindexter had exercised gross negligence in bringing her children to live with Jones because there was no evidence that "Jones had ever assaulted the children . . . ."  Poindexter went on to argue that "pointing an unloaded firearm at Mr. Jones while he was holding [N.P.] . . . does not give rise to a substantial probable risk of harm since by all accounts the firearm was not loaded at that time."  In response, the Commonwealth argued that the gun was loaded when Poindexter was pointing it—and that, regardless, Poindexter had inserted the children directly in the path of danger throughout the day.

The trial court denied Poindexter's motions to strike.  Poindexter elected to put on evidence in her own defense.  At the close of the evidence, the trial court found Poindexter guilty of child abuse or neglect under Code § 18.2-371.1(B)(1).  The trial court also found that

Poindexter had engaged in actions that foreseeably caused Jones's death and therefore convicted her of involuntary manslaughter.

ANALYSIS

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

I.  The Involuntary Manslaughter Conviction

"Involuntary manslaughter is defined as the accidental killing of a person, contrary to the intention of the parties, during the prosecution of an unlawful, but not felonious, act, or during the improper performance of some lawful act." *Cable v. Commonwealth*, 243 Va. 236, 240 (1992) (internal citations omitted) (quoting *Gooden v. Commonwealth*, 226 Va. 565, 571 (1984)).  Thus, to sustain a conviction of involuntary manslaughter under Virginia law, the Commonwealth must prove that the defendant:

> [C]ommitted "acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts."

*O'Connell v. Commonwealth*, 48 Va. App. 719, 726 (2006) (quoting *Bell v. Commonwealth*, 170 Va. 597, 611-12 (1938)).  "The Commonwealth must also prove that [the defendant's] criminally negligent acts were a proximate cause of the victim's death."  *Id.* at 727 (alteration in original). To hold a defendant criminally liable, "[t]here must be more than the lack of ordinary care." *Lewis v. Commonwealth*, 211 Va. 684, 687 (1971) (citations omitted).  "The negligence must be of such reckless, wanton or flagrant nature as to indicate a callous disregard for human life and of the probable consequences of the act."  *Id.*

       A. *There was sufficient evidence at trial to deduce Poindexter knew or should have known of the danger and probable physical harm inherent in her actions and conduct on September 16, 2020.*

Here, the evidence was sufficient for the circuit court to determine Poindexter was criminally negligent and responsible for Jones's death.  The record makes clear that Poindexter was the first to introduce a gun into the fight, increasing the likelihood that the altercation could turn deadly.  This evidence is compounded with the fact that the cellphone recording shows Poindexter pointing a gun at both Jones and N.P.  When Poindexter left to pick up P.P. from school, she took both the loaded gun and N.P. with her.  After leaving with N.P. and picking up P.P. from school, Poindexter returned home, leaving the loaded gun on the coffee table for anyone to access, including N.P.

Poindexter made certain choices throughout the day that endangered everyone involved, including Jones.  In a volatile environment, where Jones and Poindexter had heated confrontations all day, rather than keep the gun on her person for protection, or secure the gun in a safe, locked location, Poindexter chose to place the loaded gun on the coffee table, within reach of her young children.  Then she left the room.

Poindexter can also be heard threatening to kill Jones in her cellphone recording and advocating for his death: "I'll kill you, bitch . . . I want you dead . . . I'm going to hunt you

- 6 -

mother fucking down, bitch.  Watch me . . . I'm going to fucking kill you."  All these threats were made in the presence of N.P., who was then given easy access to the weapon.  Considering the totality of this evidence, a factfinder could reasonably determine that Poindexter acted with a callous disregard for human life when she left the loaded firearm unsecured in a place where N.P. could easily access it.

Poindexter attempts to rebut all this evidence by arguing that she did not explicitly instruct N.P. to handle the firearm or shoot Jones.  But Virginia's case law does not require explicit instructions.  It is sufficient that Poindexter "knew or should have known of the danger and probable physical harm inherent in the situation and that this danger was heightened" by her actions and conduct throughout the day.  *Gallimore*, 246 Va. at 446.[5]  The finder of fact ultimately concluded that although Poindexter "did not tell [N.P.] specifically" what to do, she gave "him everything other than a direct command" to kill Jones.  The record supports the conclusion that Poindexter should have known of the danger and physical harm inherent in her actions on September 16, 2020.  We find no error in the circuit court's conviction and affirm.[6]

---

[5] The defendant in *Gallimore* argued that the evidence was insufficient to support her conviction for involuntary manslaughter where she fabricated a story about a missing woman, leading to the accidental shooting and murder of the victim by the alleged missing woman's husband.  246 Va. at 446.  Poindexter distinguishes her case from *Gallimore*, arguing that because she did not single-handedly manufacture the confrontation resulting in Jones's death, she should not be held liable.  Poindexter's argument misconstrues the holding in *Gallimore*, which requires that a defendant's acts of commission or omission of a wanton and willful nature showing a reckless disregard of the right of another make the victim's resulting injury probable.  *Id.*  The evidence in this case supports the factfinder's conclusion that Poindexter knew or should have known that her actions and inactions made it probable that Jones would end up dead.

[6] The circuit court noted that Poindexter would have been guilty under either a theory of criminal negligence or innocent agent theory.  *See Bailey*, 229 Va. at 260-61.  Because we determine that Poindexter is guilty under a theory of criminal negligence, we decline to examine whether she would also be guilty under the innocent agent theory.  *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("As we have often said, 'the doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" (citing *Commonwealth v. White*, 293 Va. 411, 419 (2017) (alteration omitted) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (per curiam))); *see also Castillo v. Loudoun Cnty. Dep't of*

B. *The evidence was sufficient to prove that Jones's actions were not independent and intervening causes of his own death.*

Poindexter argues that Jones's actions were independent, intervening, and unforeseeable acts which caused his own death. The Supreme Court noted in *Gallimore*, "[t]here can be more than one proximate cause and liability attaches to each person whose negligent act results in the victim's injury or death." 246 Va. at 447 (citing *Maroulis v. Elliott*, 207 Va. 503, 510 (1966)). Even if the trial court found Jones's actions were intervening causes of his own death, any "intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury." *Id.* (quoting *Delawder v. Commonwealth*, 214 Va. 55, 58 (1973)).

Therefore, to excuse Poindexter's negligence the "intervening cause must be either a superseding or responsible cause." *Richmond v. Gay's Adm'x*, 103 Va. 320, 324 (1905). In sum, Jones's actions had to "so entirely supersede the operation of [Poindexter's] negligence, that [those] alone, without [Poindexter's] contributing negligence thereto in the slightest degree, produces the injury." *Id.* Contributory negligence does not factor into an involuntary manslaughter analysis. *O'Connell*, 48 Va. App. at 728 ("[C]ontributory negligence has no place in a case of involuntary manslaughter[.]" (quoting *Hubbard v. Commonwealth*, 243 Va. 1, 14 (1992))). Thus, an intervening act or event does not exonerate the defendant from liability if the defendant's actions put into motion that same intervening act or event. *Gallimore*, 246 Va. at 447.

The evidence in the record fully supports the trial court's conclusion that Jones's actions throughout the day were foreseeable and were not independent intervening causes of his death.

---

*Family Services*, 68 Va. App. 547, 574 n.9 (2018) ("When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment.").

Given the nature of Jones and Poindexter's relationship, and the violence that occurred throughout September 16, 2020, Jones's behavior after Poindexter returned home with N.P. and P.P. was not unforeseeable. Poindexter's own recollection indicated that Jones was violent and that the argument between Jones and Poindexter had simmered throughout the day, leading to negative encounters whenever the two were in the same location. The couple's ongoing dispute had turned violent on several occasions. Poindexter not only failed to deescalate the dangerous situation but, in fact, was sometimes the instigator. Then, after expressing her desire to see Jones dead, she placed a gun she knew was loaded on a coffee table for anyone to access, and walked away.

There was evidence that Poindexter's own criminally negligent acts and omissions ultimately resulted in Jones's death at the hands of her then ten-year-old son, N.P. The circuit court was not clearly wrong in coming to that conclusion. We affirm the judgment.

II. The trial court did not err in ruling Poindexter's conduct was sufficiently gross, wanton, and culpable to show a reckless disregard to the life and health of both N.P. and P.P.

Poindexter challenges the sufficiency of the evidence for her convictions of child neglect under Code § 18.2-371.1(B). The statute provides:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony.

Code § 18.2-371.1(B)(1). The requirements for this statute are fulfilled when the parent "subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life." *Jones v. Commonwealth*, 272 Va. 692, 698 (2006) (quoting *Commonwealth v. Duncan*, 267 Va. 377, 385 (2004)) (upholding a conviction where the mother left capsules of heroin within reach of her son). A willful act is one that "is intentional, or knowing, or voluntary." *Flowers v. Commonwealth*, 49 Va. App. 241, 248

- 9 -

(2007) (citations omitted). "When considering the level of danger necessary to support a conviction under Code § 18.2-371.1(B)(1), we have held that 'the act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury.'" *Jones*, 272 Va. at 701 (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)). Furthermore, "[c]riminal negligence is 'judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts.'" *Id.* (quoting *Kelly v. Commonwealth*, 42 Va. App. 347, 356 (2004)).

The record here supports the circuit court's finding that Poindexter exhibited a reckless disregard for N.P.'s life when she pointed a loaded gun at him while Jones held N.P. hostage. Pointing a gun at N.P. exposed N.P. to a substantial risk of harm. At any point in time, N.P. could have been injured by Poindexter's use of the firearm, or Jones's efforts to save himself. The facts in this case are very similar to this Court's recent opinion *Penn v. Commonwealth*, No. 0529-21-3 (Va. Ct. App. Mar. 8, 2022). There, this Court affirmed a conviction for child neglect under Code § 18.2-371.1(B)(1) where a mother armed herself with a knife and chased the child's father around a convenience store as he held their seven-month-old child in his arms. *Penn*, slip op. at 10-11. As this Court held in that case, "Appellant knew or should have known that by using a knife to threaten someone holding a baby, there was a risk of actual physical harm to the baby." *Id.* at 10. Similarly, Poindexter knew, or should have known, that by pointing a gun to threaten someone holding her ten-year-old, there was a risk of physical harm to her child.

Poindexter further exposed both N.P. and P.P. to a substantial or probable risk of harm when she left the loaded gun within reach of both the children. *See Wright v. Commonwealth*, No. 0558-10-2 (Va. Ct. App. Oct. 11, 2011) (affirming a conviction for felony child neglect where the mother left an unsecured handgun in a gym bag within reach of her children and

directed her children to remain in the room where the handgun was located). During the five-year-old P.P.'s phone call to police Poindexter refused to take the phone from the child, making P.P. the target of the knife-wielding Jones, who grabbed P.P., snatched the phone, and threw it outside. When rendering its guilty verdict, the trial court specifically noted that Poindexter had put her children "in a really dangerous situation." Indeed, when speaking with the detectives, Poindexter candidly—and responsibly—acknowledged her role in placing the children in peril. The evidence was sufficient to find Poindexter guilty of felony child neglect involving both N.P. and P.P. The circuit court's findings were supported by the evidence. *Chavez*, 69 Va. App. at 161 (upholding verdict if there is evidentiary support for the convictions).

## CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*